## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| JANET G. TIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:04-CV-00056AS |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, Janet G. Timmons ("Plaintiff"), appeals the denial of her application for Social Security Disability Income Benefits ("DIB").  She challenges the Administrative Law Judge's ("ALJ") finding that she was not disabled before December 24, 2000 and not disabled after December 19, 2002.

Plaintiff applied for DIB in July 1999, alleging an onset date of March 24, 1998.  After her application was denied initially and on reconsideration, Plaintiff requested a de novo ALJ hearing.   On December 28, 2000, the ALJ held that Plaintiff was not disabled, and Plaintiff requested Appeals Council review.  In February 2001, when her 1999 application was pending at the Appeals Council, Plaintiff reapplied for DIB, stating that she had been disabled since March 24, 1998.  The state agency initially denied her 2001 application, but on reconsideration found her disabled since December 29, 2000.  On May 23, 2002, the Appeals Council notified Plaintiff that it would grant her request for review of the ALJ's 2000 decision and that it would reopen the finding of disability based on Plaintiff's 2001 application and consolidate the two claims.  On

July 26, 2002, the Appeals Council remanded to the ALJ for readjudication Plaintiff's 1999 and 2001 applications. On September 22, 2003, the ALJ rendered a partially favorable decision. The ALJ found that Plaintiff was disabled only during the closed period from December 24, 2000 through December 19, 2002. The ALJ's September 2003 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the Commissioner's final decision under authority of 42 U.S.C. §§ 405(g).

## I.   BACKGROUND

Plaintiff is fifty years old, and has a high school education (Tr. 165, 182). Her past relevant work experience as a mill helper, saw helper, press helper, straightener, roll operator, and untwister operator (Tr. 64-66, 90, 177, 202-10). Plaintiff claimed that she could no longer work due to Meniere's disease and non-positional vertigo (Tr. 55).

Plaintiff testified that she experienced severe pain in her ears and she heard a loud ringing sound (Tr. 56-58). She also claimed that she became dizzy, unbalanced, and nauseous (Tr. 63). She testified that her symptoms from these conditions rendered her unable to move (Tr. 61). She stated that two days out of five, she was unable to function (Tr. 61-62). However, if she lifted something, engaged in repetitive head movement, watched traffic go by, saw certain patterns on clothes, watched a ceiling fan, saw light coming through trees, or was in fluorescent light, her symptoms would start up (Tr. 62). Also, a lot of bending, stooping, and carrying laundry up and down stairs caused her symptoms (Tr. 63). Plaintiff testified that she was able to take care of her personal needs some days (Tr. 51). On a good day, she could drive (Tr. 52). She read, watched television, listened to the radio, and occasionally did crafts (Tr. 53-54). She was able to pull

2

weeds from a flower bed (Tr. 55).  Also on a good day, she could sit at the computer, but if she

had to scroll, it made her sick (Tr. 70).  She stated that she had about two bad attacks per week,

and two or three shorter attacks per day (Tr. 67).

**A.     Medical Evidence**

The medical evidence generally demonstrates that Plaintiff suffered from a history of

epicondylitis, vertigo, depression, and anxiety (Tr. 246-52).[1]

In his January 4, 2000 report, Carl Griffin, M.D., diagnosed Plaintiff with Meniere's

disease and benign positional vertigo (Tr. 497).  He reported that Plaintiff had intermittent and

unpredictable problems with disabling dizziness and balance and that she was unable to safely

work on ladders, at heights, or around dangerous machinery (Tr. 497).  In a physical capacities

form, Dr. Griffin opined that Plaintiff had no limits on walking or standing, could sit for six to

eight hours, could occasionally squat, kneel, and reach, but never climb, and that she was

restricted from working at heights and near moving machinery (Tr. 498).  He opined that based

on the restrictions outlined in the physical capacities form, Plaintiff could perform work in an

office setting; however, production floor work, where working around moving machinery, at

heights, or where unforseen disability would compromise the safety of herself or coworkers

would not be acceptable (Tr. 497).

During the July 15, 2003 hearing, Paul Boyce, M.D., a specialist in internal medicine and

endocrinology, testified as a medical expert (Tr. 76).  Dr. Boyce testified that the record evidence

---

[1]Plaintiff limits the medical facts as they relate only to Dr. Boyce's testimony.  Defendant limits the facts as they relate to Dr. Boyce's testimony and to Dr. Griffin's report.  Because neither party sets forth medical history beyond that of Dr. Boyce and Dr. Griffin, the Court, likewise, will limit its discussion to the medical history offered by the parties.

did not support a diagnosis of Meniere's Disease, but rather Benign Positional Vertigo (Tr. 102).

He noted that repeated audiograms done over a number of years failed to document any hearing

loss, which was inconsistent with the duration of Meniere's Disease (Tr. 102). Dr. Boyce

considered functional assessments provided by a State Agency physician from November 1999,

of Dr. Berner from November 1999, and from Dr. Griffin from January 2000 (Tr. 103, 389-96,

497, 862). Dr. Boyce indicated that they were all similar, indicating that Plaintiff was capable of

sitting or standing for six of eight hours; however, there were variations in terms of her ability to

lift, which ranged from light to sedentary (Tr. 103-04). Dr. Boyce noted that medical evidence

documented  Plaintiff's limitations, due to dizziness, of not being around moving machinery or at

heights (Tr. 103). Dr. Boyce opined that Plaintiff did not meet or equal a Listing (Tr. 103-04).

Dr. Boyce indicated that he felt the functional assessments were consistent with the evidence, and

that the issues in terms of balance, standing, sitting, walking, and being around machinery were

consistent, but that the inconsistency regarding Plaintiff's weight limitation may have been

influenced by her reports that she had fallen and injured her elbow (Tr. 104). Dr. Boyce indicated

that movements of objects in front of Plaintiff, whether from her hand or somewhere else,

certainly might aggravate a vertigo attack (Tr. 106). Dr. Boyce noted that it would be reasonable

for Plaintiff to experience a couple of severe vertigo attacks in a month, except that the records of

Dr. Berner, a treating physician, suggested that in the last year, Plaintiff had been having very

little difficulty (Tr. 106). Dr. Boyce noted that up until the last year, Dr. Berner's notes supported

Plaintiff's testimony (Tr. 107). He noted that even notes following a procedure done in 1999,

indicated that Plaintiff was doing well (Tt. 107-08). Dr. Boyce opined, based on the medical

evidence, that Plaintiff "could work in an office environment, which is relatively quiet where

there's not a lot of machinery" (Tr. 107). He stated that most offices that he was familiar with and had worked in were "moderately quiet anymore and do not have moving machinery. Probably about the only thing that moves is the computer screen" (Tr. 107). Dr. Boyce testified that assembling things in front of her could aggravate Plaintiff's vertigo (Tr. 107). Dr. Boyce noted that the statement in Dr. Griffin's functional assessment, that Plaintiff had intermittent and unpredictable problems with dizziness and balance, was consistent with the record (Tr. 111, referring to 497).

**B.    Vocational Expert Evidence**

Constance Brown, a vocational expert ("VE"), appeared and testified at the hearing. The ALJ asked the VE the following hypothetical question:

> Let's assume a hypothetical person the Claimant's age, education and work experience that's capable of work at the light exertional level provided she's allowed to alternate into a sitting position at her option for a minute or two every hour. With no more than occasional bending, squatting, climbing of stairs or ramps. No kneeling, no crawling, no climbing of ropes, ladders, or scaffolds. The individual should avoid work at unprotected heights, around dangerous moving machinery or operating a motor vehicle or being around open flames or large bodies of water. The work should not involve rapid head or neck movements or watching computer screens. I'm not sure how I phrased that before but I'm going to have to go back and rephrase that. No rapid head movements - head or neck movements, including both head and neck. I'm not sure I said that before. No rapid head or neck movements and no prolonged watching of computer screens. Given that residual functional capacity, is there any work such a person could do?

When asked to consider a hypothetical person of Plaintiff's age, education, and past work experience who possessed the residual functional capacity for work at the light exertional level provided, the VE testified that such an individual in Indiana could do such jobs as a general office clerk (2,000), stock and inventory clerk (2,000), mail clerk (1,100), and that such jobs existed in Indiana. The VE testified that a hypothetical person could perform the jobs identified if the person

had several additional limitations.  The hypothetical person could not work in close proximity to spinning machinery, do repetitive and forceful gripping, operate vibrating tools, or work overhead.

**C.    The ALJ's Decision**

The findings of the ALJ were as follows:

1.    The claimant met the disability insured status requirements of the Act at all times relevant to this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The medical evidence establishes that the claimant has "severe" impairments consisting of a history of carpal tunnel syndrome, epicondylitis, benign positional vertigo, depression, and anxiety.

4.    This medical evidence establishes that for the periods of time before December 24, 2000 and after December 19, 2002, the claimant's "severe" impairments have not been attended by medical signs or laboratory findings which meet or equal in severity any impairment contained in the Listing of Impairments ("Listings") found in Appendix 1, Subpart P, Regulations No. 4.

5.    From December 24, 3000 to December 19, 2002, the claimant's benign positional vertigo, depression, and anxiety were attended by medical signs or laboratory findings which equaled in severity the criteria of Listing 12.04.

6.    As of December 19, 2002, the claimant had experienced medical improvement related to her ability to work.

7.    For the periods of time before December 24, 2000 and after December 19, 2002,

6

the claimant has retained the residual functional capacity to perform light exertional work with the following restrictions and limitations: the ability to alternate into a sitting position at her option for one to two minutes per hour; occasional bending, squatting, and climbing of ramps and stairs; no kneeling, crawling, or climbing of ladders, ropes or scaffolds; no work at unprotected heights, work around dangerous moving machinery, operating a motor vehicle, being around open flames, being around large bodies of water, rapid neck or head movements, overhead work, watching computer screens or spinning machines, repetitive forceful gripping or operation of vibrating tools; and the work tasks should be simple and repetitive in nature, not involving more than three to five step processes.

8.      The claimant's subjective complaints and allegations concerning the severity of her impairments are not fully consistent with the objective medical and other evidence of record.

9.      The claimant is unable to perform her past relevant work as a mill helper, saw helper, press helper, straightener, roll operator or untwister operator.

10.     The claimant is a younger individual.

11.     The claimant has a high school education.

12.     The claimant has no transferable skills.

13.     Based on an exertional capacity for light work, and the claimant's age, education and work experience, Medical-Vocational Rule 202.21 would direct a conclusion of "not disabled" for periods of time before December 24, 200 and after December 19, 2002.

14.     Although the claimant's limitations do not allow her to perform the full range of

7

light work, using Rule 202.21 as a framework for decision making, there are a significant number of jobs in the State of Indiana which she has been capable of performing for the periods of time before December 24, 2000 and after December 19, 2002, and which are consistent with her residual functional capacity and vocational factors.  Examples of such jobs include general office clerk (3000 jobs), stock and inventory clerk (2000 jobs) and mail clerk (1100 jobs).

15.     The claimant's capacity for light work has not been significantly compromised by exertional and nonexertional restrictions and limitations.  Accordingly, using Rule 202.21 as a framework for decision making, she is not disabled for the periods of time before December 24, 2000 and after December 19, 2002.

16.     The claimant was not disabled, within the meaning of the Social Security Act, from March 24, 1998 to December 24, 2000.

17.     The claimant was disabled, within the meaning of the Social Security Act, from December 24, 2000 to December 19, 2002.

18.     The claimant has not been disabled, within the meaning of the Act, since December 19, 2002.

## II.   STANDARD OF REVIEW

This court's review of the Commissioner's decision is a limited one.  Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence.  *Griffith v. Callahan*, 138 F.3d 1150, 1152 (7th Cir. 1998).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971).  In making a

substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner. *Griffth*, 138 F.3d at 1152; *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997). That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Griffth*, 138 F.3d at 1152. The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Id.*; *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## III.   DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d

9

383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971).  "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question."  *Jeralds*, 445 F.2d at 39.  Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits."  *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982).  Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured.  *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976).

The claimant must show that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled.  As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy.  *Clifford*, 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled.  *Clifford*, 227 F.3d at 868.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled."  *Id.*  The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the

10

Commissioner.  *Id.*

The Plaintiff disagrees with the ALJ's finding that she was not disabled before December 24, 2000 and not disabled after December 19, 2002.  In particular, the Plaintiff argues that the ALJ's hypothetical questions did not reflect the ALJ's own findings and that the hypothetical questions did not reflect the ALJ's endorsement of medical expert Dr. Boyce's testimony.

**A.    The ALJ's Hypothetical Question**

The Plaintiff contends that the substantial evidence does not support the ALJ's step-five and step-eight findings of non-disability because the hypothetical questions upon which the ALJ relied were inaccurate and incomplete judged by the standard of the ALJ's own findings.  The Plaintiff asserts that, as matters of law and logic, to support a finding of non-disability, an ALJ's hypothetical question must match the ALJ's residual functional capacity finding and findings about the claimant's vocational profile (age, education, and work experience).  In particular, the ALJ restricted the Plaintiff to tasks that were "simple and repetitive in nature."  The Plaintiff argues that the hypothetical questions upon which the ALJ relied did not specify that the person could only do work that was "simple" and "repetitive."  Further, the Plaintiff argues, restrictions to "simple" and "repetitive" work are distinct.

However, the Defendant argues that all of the jobs identified by the VE were "unskilled," and "unskilled" work, by its very nature would be simple and likely repetitive in nature.

This Court does not make the distinction between "simple" and "repetitive."  Instead, the Court reviews the entire record, including the ALJ's hypothetical questions, in order to ascertain whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards.  When considering the appropriateness of an hypothetical question

posed to a vocational expert, all that is required is that the hypothetical question be supported by the medical evidence. *Ehrhart v. Secretary of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). The hypothetical question posed to the VE contained merely a minor difference in the language from the limitation in the RFC. In their entirety, the hypothetical questions posed to the VE match the ALJ's residual functional capacity finding and findings about the claimant's vocational profile. Upon review of the entire record, the Court finds that the ALJ's findings are supported by substantial evidence and that the ALJ applied the correct legal standards.

**B.   The ALJ's Consideration of Dr. Boyce's Testimony**

The Plaintiff contends that the RFC finding and hypothetical question did not include all of the limitations indicated in Dr. Boyce's testimony and the ALJ did not articulate reasons for rejecting some of Dr. Boyce's limitations.

First, Dr. Boyce testified that he believed that Plaintiff could work in an office environment, which was relatively quiet where there was not a lot of machinery (Tr. 107). He stated that most offices with which he was familiar were "moderately quiet anymore and do not having moving machinery" (Tr. 107). The ALJ reasonably considered Dr. Boyce's testimony to mean that Plaintiff could work in an office environment since they were moderately quiet and had no moving machinery. Moreover, because Plaintiff did not testify at either hearing that noise set off her symptoms of vertigo, it was not unreasonable for the ALJ not to include a restriction to a quiet office in the RFC finding or the hypothetical question. Even if the jobs as a stock and inventory clerk and mail clek were eliminated, 3,000 jobs the Plaintiff could perform would still remain.

Second, Dr. Boyce testified that movement of objects in front of Plaintiff might aggravate

12

a possible vertigo attack, but he did not testify that Plaintiff should be totally precluded from the movement of all objects in front of her.  Dr. Boyce further testified that Plaintiff was having very little difficulty with dizziness in the last year.  Therefore, there was no error by the ALJ in not including such a limitation in his RFC or his hypothetical question.

Finally, the ALJ adequately reconciled Dr. Boyce's testimony about intermittent disability with his RFC finding.  The report from Dr. Griffin stated that Plaintiff had intermittent and unpredictable problems with disabling dizziness and balance and that she was unable to safely work on ladders, at heights, or around dangerous machinery (Tr. 497).

## IV.   CONCLUSION

Based on the foregoing, the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date: December 21, 2005                                    **S/ ALLEN SHARP**
                                                          **ALLEN SHARP, JUDGE**
                                                          **UNITED STATES DISTRICT COURT**